UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>NORTH GEORGIA ELECTRIC<br>MEMBERSHIP CORPORATION et al.,<br><br>    Defendants. | Civil Action No. 5:16-cv-820-FL |

## ORDER

This action comes before the Court on a Motion for Award of Common Defense Costs incurred in the course of the negotiations of the Consent Decree entered in this action on November 22, 2016, filed by Moore & Van Allen PLLC ("MVA") and Poyner Spruill LLP ("PS") (collectively the "Movants"). This action was filed and the Consent Decree entered to consummate a settlement between the United States (the "Environmental Protection Agency" or "EPA") and the 170 Settling Defendants for the funding and management of the last, unaddressed scope of remediation required by EPA at the Ward Transformer Superfund site. Per the settlement, over $7.3 million dollars was raised, mostly from Settling Defendants, for remediation downstream of the former Ward Transformer plant, in the area EPA designated as "operable unit 1" or "OU-1." In exchange, all Settling Defendants received covenants not to sue and contribution protection against any further claims arising from the Ward Transformer site from EPA. Pursuant to the Consent Decree, the funds raised for this settlement and OU-1 work are maintained in a trust (the "OU-1 Trust"), and certain Settling Defendants are the trustees for that trust. Pursuant to Section XXII of the Consent Decree, the Court maintains jurisdiction over

both the subject matter of the Consent Decree and the Settling Defendants for the purpose of enabling the parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction and modification of the Consent Decree.

Movants indicate that Mr. William White of MVA and Mr. Keith Johnson of PS performed various common defense tasks once an agreement in principle was reached with EPA and an allocation framework for funding the remaining OU-1 work was crafted, through the course of those negotiations, which are described in affidavits submitted by Mr. White and Mr. Johnson. Between the two of them, these tasks included: communicating the initial terms of the "global" agreement with EPA and the funding allocation framework to the over 170 parties who were eligible to participate in such a settlement; soliciting those parties' participation in the settlement and responding to their questions; maintaining and revising the lists of interested parties by category based upon the types of transactions they had with Ward Transformer that would eventually be Appendices A-C to the Consent Decree; serving as the point of contact for proposed revisions to the first draft of the Consent Decree received from EPA; circulating communications with EPA's counsel and subsequent versions of the Consent Decree to the interested parties; coordinating defense conference calls and responding to requests for copies of the settlement documents and updates on the negotiations from the interested parties.

MVA (Mr. White) seeks $38,946.55 for these common defense tasks. PS (Mr. Johnson) seeks $35,315.13 for these tasks. Each Movant has submitted a detailed invoice for the services. Both Mr. White and Mr. Johnson indicate they kept separate time records between these common tasks and their work for their clients related to the Consent Decree, and billed their clients who are among the Settling Defendants for their other work related to the Consent Decree negotiations.

For good cause shown, the Motion is GRANTED. Obviously considerable coordination was required among the over 170 parties who were eligible to participate in the settlement with EPA, once initial settlement terms were reached with EPA and an allocation framework arrived at. The tasks Mr. White and Mr. Johnson fulfilled were necessary for the parties to get from that point to where a final Consent Decree could be entered between EPA and 170 Settling Defendants, and accrued to the benefit of all the parties to the Consent Decree. Mr. White and Mr. Johnson indicate the subject of how their firms should be compensated for these common defense tasks was discussed in the spring of 2016 during a conference call among all potential defendants, at which time Mr. White and Mr. Johnson agreed to defer such compensation until a Consent Decree was entered, at which time they would seek compensation for these common tasks from the funds raised. They circulated draft statements itemizing their time on common defense tasks to date at that time. There is no indication any potential defendant objected to that plan. The award of attorneys' fees for these common tasks is also consistent with the common fund doctrine. That doctrine applies to award fees to lawyers who create, enhance or preserve a common fund for a group of beneficiaries. *E.g.*, *In re College Properties Limited Partnership*, 2007 Bankr. LEXIS 1892, 48 Bankr. Ct. Dec., 107, at 6, (U.S. Br. Ct. Ariz, 2007). Finally, Movants communicated in advance their intent to file this Motion, and no party has indicated they oppose it.

Accordingly, the Settling Defendants who are trustees of the OU-1 Trust are hereby ordered to treat the Movants' expenses, as reflected in the MVA and PS invoices for common defense costs, as necessary costs for the establishment of the OU-1 Trust, and to pay those fees from the OU-1 Trust.

SO ORDERED.

This the 3rd day of February, 2017.

_____
Louise W. Flanagan
United States District Court Judge